

**SIGNED this 26 day of June, 2006.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: § | | CASE NO. 05-14396-FM-13 |
| § | | |
| THOMAS J. LINCOLN and § | | |
| VICKIE M. LINCOLN § | | CHAPTER 13 |
| Debtors § | | |

MEMORANDUM OPINION

This court held a hearing on May 3, 2006 on Thomas and Vickie Lincoln's Objection to Proof of Claim Filed by East First Concert Hall, Inc. This Court has jurisdiction under 28 U.S.C. §1334(a), (b) and (d), 28 U.S.C. §151, 28 U.S.C. §157(a) and (b)(1), and the Standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. §157(b)(2)(B) as it is a question of whether the claims cap under 11 U.S.C. §502(b)(6) applies to a lease guarantor in bankruptcy. It is, therefore, a proceeding arising under Title 11. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052 which is made

1

applicable to contested matters under Bankruptcy Rule 9014.

Findings of Fact

Thomas J. Lincoln, Inc. ("Lincoln, Inc.") entered into a Commercial Lease Agreement with East First Concert Hall, Inc. ("EFCH"). Thomas J. Lincoln ("Debtor") executed an Amended Guaranty Agreement in his individual capacity. Debtor concedes that he personally guaranteed the Commercial Lease Agreement. Lincoln, Inc. abandoned the leased premises in early September, 2002 and EFCH relet the premises in March of 2003.

Subsequently, both the Debtor and Lincoln, Inc. filed for bankruptcy protection. Lincoln, Inc. filed a petition for relief under Chapter 11 on September 24, 2004. EFCH timely filed its proof of claim in Lincoln, Inc.'s case on December 15, 2004 as a general unsecured claim in the amount of $281,332.41.

Thomas J. Lincoln and Vickie M. Lincoln, owners of Lincoln, Inc. filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 1, 2005 proposing a minimal dividend to their unsecured creditors. EFCH then filed a claim in their Chapter 13 case on October 4, 2005 in the amount of $281,332.41 based on Debtor's lease guaranty.

Lincoln Inc. objected to EFCH's proof of claim claiming that EFCH's lease rejection damages were limited by the claims cap under 11 U.S.C. §502(b)(6) of the Bankruptcy Code. After a hearing on the objection, the Court determined that the lease terminated in March of 2003 when EFCH relet the premises and that the claims limitation of §502(b)(6) applied. Based on this section, the Court then determined that Lincoln, Inc. owed EFCH past due rent charges through March, 2003 plus the rent reserved for one year beginning April 1, 2003 less any credits owed to Lincoln, Inc. in

connection with EFCH's reletting of the premises. The Court requested that the parties calculate this amount and submit an Order to that effect. The parties submitted an Order capping the lease damages in the amount of $124,696.89 which Order the Court entered on May 30, 2006.

Debtor also objected to EFCH's proof of claim in his Chapter 13 case. Debtor, as guarantor of the lease, argues that EFCH's claim should also be limited as to him individually under 11 U.S.C. §502(b)(6). At the May 3, 2006 hearing, the Court requested that both parties submit authority on the application of 11 U.S.C. §502(b)(6) to a guarantor of a lease.

## Legal Issue

Whether 11 U.S.C. §502(b)(6) applies to limit claims against a lease guarantor in his Chapter 13 case?

## Conclusions of Law

The Bankruptcy Code was designed to benefit and protect debtors who sought relief under its provisions. Section 502(b)(6) sets a limitation on a landlord's claim against a debtor for damages from termination of a real property lease. Section 502(b)(6) states:

> Except as provided in subsections (e)(2), (f), (g), (h) and (I) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that–
>
> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds–
>
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
>     (i) the date of the filing of the petition; and
>     (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

      (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 506(b)(6).

      A guarantor of a lease who is <u>not</u> in bankruptcy should not get the benefit of the §502(b)(6) cap as such obviously contravenes both the express and implied goals of bankruptcy. The Bankruptcy Code specifically states in 11 U.S.C. §524(e) that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." This section has been cited in a number of cases which hold that a guarantor's liability remains even after the bankrupt principal is released from liability. *Union Carbide v. Newboles,* 686 F.2d 593, 595 (7th Cir. 1982), *R.I.D.C. Industrial Development Fund v. Snyder,* 539 F.2d 487, 490 n.3 (5th Cir. 1976), *United States on Behalf of Small Business Administration v. Kurtz,* 525 F.Supp. 734 (D.C. Pa. 1981), *aff'd* 688 F,2d 827 (3rd Cir. 1982, *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74, 74 L.Ed. 2d 387 (1982). Consequently, it has been uniformly held that §502(b)(6) does not apply to a non-debtor guarantor who attempts to use this statute to limit his liability. *Bel-Ken Associates Ltd. Partnership v. Clark,* 83 B.R. 357 (D. Md. 1988). *Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.),* 28 B.R. 181 (Bankr. Mo. 1983).

      However, the more difficult question is the proper application of §502(b)(6) against a guarantor who has filed his own bankruptcy. A majority of courts have held that the limitation on damages under §502(b)(6) applies in the guarantor's bankruptcy case concluding that a literal reading of the statute, as well as the purpose behind such legislation i.e. the need to provide a ratable distribution to all unsecured creditors in bankruptcy, requires such result. *In re Rodman*, 60 B.R. 334 (Bankr.W.D.Ok.1986); *In re Revco D.S., Inc.,* 138 B.R. 528 (Bankr.N.D.Ohio.1991); *In re*

*Thompson,* 116 B.R. 610 (Bankr. S.D. Ohio, E.D. 1990); *Matter of Interco, Incorporated.,* 137 B.R. 1003, 1007 ( Bankr. E.D. Mo. 1992) and *In re Farley*, 146 B.R. 739 (Bankr.N.D.Ill.1992); *In re Arden,* 176 F.3d 1226 (9th Cir. 1999).

On its face, §502(b)(6) neither specifically includes nor excludes guarantors from the statutory limit on damages. Rather, the wording of the statute limits the amount of a lessor's damages claim against a bankruptcy estate, when those damages arise from the termination of a lease. The purpose is not to limit the liability of a particular entity, but to limit the amount of the damage claim the lessor may be allowed against the bankruptcy estate's assets. Thus, a literal reading of the statute requires limiting the lessor's damage claim against the estate of a debtor for termination of a lease regardless of the identity of the entity of the debtor. *Matter of Interco Incorporated,* 137 B.R. 1003 (Bankr. E.D. Mo. 1992).

Section 502(b)(6) is "designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate." S.Rep. 95-989, 95th Cong., 2d Sess. 63, reprinted in 1978 U.S.C.C.A.N. 5787, 5849. The rationale for this subsection is further explained in *Oldden v. Tonto Realty Corp.,* 143 F.2d 916 (2d Cir. 1944) as follows:

> But allowance in full of such [rent] claims did not seem the appropriate answer, since other general creditors would suffer proportionately, and the claims themselves would often be disproportionate in amount to any actual damage suffered, particularly in the event of a subsequent rise in rental values. In truth, the landlord is not in the same position as other general creditors, and there is no very compelling reason why he should be treated on a par with them. For, after all, he has been compensated up until the date of the bankruptcy petition, he regains his original assets upon bankruptcy, and the unexpired term in no way really benefits the assets of the bankrupt's estate.

*Id.* at 920.

It is apparent from the legislative history and case law that the purpose of §502(b)(6) is to compensate the landlord fairly while protecting other creditors in a bankruptcy case. And yet, it has been held in a §502(b)(7) case [which has language very similar to that found in §502(b)(6)] that a debtor-guarantor is liable for the full amount due under the underlying employment contract he guaranteed notwithstanding the statutory limitation on its allowability in the primary obligor's case. *See In re Johnson,* 117 B.R. 461, 470 (Bankr. D. Minn. 1990)("'Generally, the purpose of a guaranty is to provide payment when for any reason the principal debtor fails to discharge his obligations.'") (quoting *Victory Highway Village, Inc. v. Weaver,* 634 F.2d 1099, 1102 (8th Cir. 1980).

The 5th Circuit has yet to address this issue under §502(b)(6). However, it has ruled under §502(b)(7) in *In re Goforth,* 179 F.3d 390 (5th Cir. 1999). *Goforth* dealt with wrongful employment termination damages under 11 U.S.C. §502(b)(7). Such section is comparable to the claims limitation of §502(b)(6) except for the fact that it deals with employment termination. Goforth executed a stock purchase agreement (aka an Integrated Agreement) with Ernest Hall to purchase his shares of a corporation. The parties also entered into an employment agreement to retain Hall as an employee of the corporation. The signatories to this agreement were Hall and the corporation. Goforth executed the employment agreement on behalf of the corporation, but he did not sign individually. Hall was subsequently terminated and sued Goforth and the corporation for wrongful termination. The case was arbitrated and the arbitrator issued an award in the amount of $1,127,237 not only against the corporation but also against Goforth jointly and severally.[1] Subsequent to the state court entering the judgment based on the arbitration award, both Goforth and the corporation

---

[1] The parties later agreed that approx. $300,000 derived from the Integrated Agreement and was secured and the remaining $827,000 derived from the Employment Agreement and was unsecured.

filed for protection under Chapter 11.

The bankruptcy court held that §502(b)(7) limited Hall's $827,000 unsecured claim against the corporation to $192,000 because Hall was the corporation's employee and the claim arose out of a breach of the employment agreement. Goforth attempted to use §502(b)(7) to also limit Hall's claim against him as well. The 5th Circuit acknowledged that the plain reading of the statute supported Goforth's position. "The language of the statute does not state that it applies only where the debtor is the actual employer of the claimant." *Goforth* at 393. Instead, it states that it applies to claims "of an employee for damages resulting from the termination of an employment contract." 11 U.S.C. §502(b)(7).

Notwithstanding the plain reading of the statute, the 5th Circuit relied on *Johnson, supra* in holding that §502(b)(7) does not limit an employee's claim against a debtor-guarantor. The *Johnson* court held that §502(b)(7) did not apply to the employee's claim arising from the alleged breach of the personal guaranty "because the terminated employment relationship did not run between the [employee and guarantor]", and therefore the guarantor was "not directly entitled to the protection of the statute" even where the guarantor had filed bankruptcy. *Id.* at 470. In reaching its conclusion, the *Johnson* court had examined the nature of personal guaranties and concluded that a guarantor would be liable for the full contractual amount notwithstanding any limitation on its allowability in the employer's case. The *Johnson* court had also declined to address the "immemorial preference for ratable distribution in bankruptcy cases" merely claiming it was not grounded in the statute nor in case law. *Id.* at 471. Nor did the *Johnson* court address the purpose behind §502(b)(7) other than it intended to "track..the landlord limitation on damages provision" of §502(b)(6). H.R. Rep. No. 595, 95th Cong. 1st. Sess. 354 (1977); S.Rep. No. 989, 95th cong. 2d. Sess. 64-5 (1978). Instead,

7

*Johnson* concluded that the operation of 11 U.S.C. §524(e) and a common sense recognition of the commercial lease function of personal guaranties of leases dictate that a limitations cap cannot apply to a debtor-guarantor. *Johnson* at 471 *citing In re Danrik,* 92 B.R. 964 (Bankr. N.D. Ga. 1988); *Bel-Ken Assoc. Ltd. Partnership v. Clark,* 83 B.R. 357 (Bankr. D. Md. 1988); and *Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.),* 28 B.R. 181 (Bankr. E.D. Mo. 1983).

However, as discussed above, in *Modern Textile* and *Bel-Ken Assoc. Ltd. Partnership,* the guarantors were not debtors in a bankruptcy case.[2] And, *Danrik* (where the guarantor was actually in bankruptcy) is completely different factually. In *Danrik* the debtor who guaranteed the lease obtained confirmation of a Chapter 11 plan paying all other unsecured creditors in full.*"* 92 B.R. at 967. The *Danrik* court decided that §502(b)(6) did not apply literally, and "[g]iven the facts of this unusual case where the guarantor-debtor was solvent, where all other claims were paid in full, where the lessee itself has not sought the protection of the bankruptcy court, and where the claim is not disproportionately large," the court overruled the debtor's objection to "that portion of [the lessor's] claim which exceeds the formula in §502(b)(6)" *Id.* at 972. *Danrik* appears to be an isolated decision due to its unique facts. It was also decided before the Supreme Court's decision in *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026 (1989) which held that the court is not free to make equitable adjustments contrary to the plain meaning language of the Code.

The 5th Circuit in *Goforth,* although acknowledging several of the cases holding that §502(b)(6) limits the claim of a landlord against the debtor-guarantor and paying lip-service to the

---

[2]*Bel-Ken* even acknowledges that a guarantor's liability may be limited to prevent a landlord from recovering "disproportionately large claims," *Fisher v. Lee Brothers Value World, Inc.,* 486 F.2d 1037, 1038 (9th Cir. 1973)(debtor merged with guarantor prior to bankruptcy; landlord-creditor attempted to collect damages on breach of contract and breach of guaranty claims).

8

literal unambiguous statutory language, declined to cap the §502(b)(7) claim against the debtor-guarantor and further declined to address the legislative intent behind either statute. See, *Rodman*, 60 B.R. 334; *Revco D.S., Inc.*, 138 B.R. 528; *Matter of Interco,* 137 B.R. 1003; and *Farley*, 146 B.R. 739. Does this mean that the 5th Circuit would therefore apply its §502(b)(7) rationale to a debtor-guarantor in a §502(b)(6) case? We really do not know.

However, in *Goforth* the Circuit acknowledges "*the main purpose of bankruptcy is to administer an estate to bring about a ratable distribution of assets among the bankrupt's creditors.*" *Goforth* at 395 citing *Johnson* at 469-470; *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946); and *Haber Oil Co. v. Swinehart (In re Haber Oil Co.),* 12 F.3d 426, 435 (5th Cir. 1994)(emphasis added). Even so, the Circuit did not apply the rateable distribution of assets rationale in Goforth's case. Nor did it apply the plain language of the statute which it acknowledged supported capping the creditor's claim.

This Court declines the invitation to apply the *Goforth* analysis of §502(b)(7) to a case under §502(b)(6). Although the statutes are comparable, *Goforth* is precedent only under §502(b)(7) and not §502(b)(6). Further, it is clear that not only do the rules of statutory construction require this result, but the purpose behind such statute does as well, i.e. "ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws." *Haber Oil Co.* 12 F.3d 426 at 435. Proper statutory construction requires the Court to apply the plain language of §502(b)(6). That language could not be clearer. It requires that the lessor's claim herein against the debtor-guarantor be capped. The statute does not limit its application to the lessee. It should be interpreted as it plainly reads and, therefore, should be applied in any bankruptcy case where the debtor has liability on a lease that has been terminated. EFCH's claim is subject to the limitations set forth in

9

§502(b)(6).

As to the calculation of EFCH's claim against the guarantor, no case law analyzes this issue in detail. The few that mention it apparently conclude that the claim against the guarantor is calculated the same as the claim against the lessee. *In re Thompson,* 116 B.R. 610 (Bankr. S.D. Ohio, E.D. 1990); *Matter of Interco,* 137 B.R. 1003, 1007 ( Bankr. E.D. Mo. 1992). This would make sense as the formula for calculating damages is based on actions in connection with the lease itself which is entered into between the lessor and lessee. Consequently, EFCH's claim will be limited to $124,696.89. Recovery from either Lincoln, Inc.'s or the Debtor's bankruptcy case is limited to a single recovery of this amount if such is available upon distribution.

## Conclusion

"The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.'" *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235 (1989). The proper interpretation of §502(b)(6) is that there are only two requirements for the damages cap to apply: 1) a claim of a lessor for damages; 2) resulting from the termination of a lease of real property. The result is not to limit the liability of a particular entity, but to limit the amount of damages the lessor may be allowed against the bankruptcy estate. There are no unusual facts in this case which would produce a result at odds with the statute. The lessee filed its own Chapter 11 case in which §502(b)(6) applies. The debtor-guarantor is insolvent and in Chapter 13. The claim, if allowed without regard to the §502(b)(6) cap, will be burdensome on the other creditor's in Debtor's estate as it would unduly dwarf the other unsecured creditors' claims. The Debtor is entitled to the §502(b)(6) cap on damages under the plain meaning of the statute. The Debtor's Objection to Proof of Claim of East

First Concert Hall, Inc. is granted. An order will be entered of evendate herewith consistent with this opinion.

###